Page 1 of 21

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF ARKANSAS

### CENTRAL DIVISION

**JURY TRIAL DEMANDED**

FILED

U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 22 2025

TAMMY H. DOWNS, CLERK

By: _____ DEP CLERK

TERRY LAMAR MCCOY                                          PLAINTIFF

V.            CASE NO. : 4:25-cv-00992-LPR-JJV

G. MUSSELWHITE, et al                                     DEFENDANTS

## 42 U.S.C. § 1983 COMPLAINT

This case assigned to District Judge __Rudofsky__
and to Magistrate Judge __Volpe__

## VERIFIED COMPLAINT FOR DAMAGES
## AND INJUNCTIVE RELIEF

### I. INTRODUCTION

1. This is a § 1983 action filed by Pro Se' Plaintiff Terry Lamar McCoy, a state prisoner, alleging violation of his constitutional rights to be assigned to a safe living environment, alleging violation of his constitutional rights to be housed under constitutional conditions of confinement, alleging violation of his constitutional rights to receive medical care, and seeking injunctive relief, money damages, and punitive damages.

### II. JURISDICTION

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 in that this is a civil action arising under the Constitution of the United States.

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1343(a)(3) in that this action seeks to

redress the deprivation(s) under color of state law of rights secured by Acts of Congress providing for equal rights of persons within the jurisdiction of the United States of America.

## III. PARTIES

4.    Plaintiff TERRY LAMAR MCCOY, A.D.C. # 654559 at all times relevant to this lawsuit was, and still is confined by the Arkansas Department of Corrections at the Cummins Unit, Post Office Box # 500 Grady, AR. 71644-0500.

5. Defendants (Musselwhite, Young, Rucker, Hargraves, Williams, Daniels, Coleman, Pharfan, Kellabrew, and Payne at all times relevant to this lawsuit was employed with the Arkansas Department of Corrections, also Doctor Young at all times relevant to this lawsuit was employed with the Arkansas Department of Correction, and the following defendants: West, Crosby, James, Wade, Reed, Levy, Trotter, Profit, Hadley, and Cage, Bealey, Night, and M⁵ Gee

(A) G. Musselwhite
Superintendent
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

(F) Ms. A. Williams
Pen Store Orders
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

(B) L. Young
Deputy Warden (Security)
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

(G) Major Daniels
Building Security
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

(C) Lieutenant M. Rucker
Fire, Safety, & Sanitation
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

(H) Major Coleman
Building Security
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

(D) Ms. Hargraves
Medical Personnel
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

(I) Ms. Pharfan
Unit Trainer
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

(E) Doctor Young (Medical Personnel)
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

(J) Ms. kellabrew
Unit Trainer
Cummins Unit
Post Office Box # 500
Grady, AR 71644-0500

Page 5 of 21

(K) Sgt. J. West
Security Personnel
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

(P) Officer Levy
Security Personnel
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

(L) Crosby
Security Personnel
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

(Q) Officer Trotter
Security Personnel
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

(M) Officer James
Security Personnel
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

(R) Officer Profit
Security Personnel
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

(N) Captain Wade
Security Personnel
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

(S) Hadley
Security Personnel
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

(O) Officer Reed (Security Personnel)
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

(T) Officer Cage (Security Personnel)
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

Page 5 A of 21

Sgt. Night (Security personnel)
Cummins Unit
Post Office Box #500
Grady, AR. 71644-0500

Sgt. Bealey (Security Personnel)
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

Lieutenant McGee (Security Personnel)
Cummins Unit
Post Office Box # 500
Grady, AR. 71644-0500

## IV. EXHAUSTION OF AVAILABLE REMEDIES

6 . Plaintiff exhausted his administrative remedies fully before filing this complaint, but to no avail.

## V. FACTUAL STATEMENT

7 . I arrived at Cummins Unit on 4/29/2025, and to this date, have been involuntarily exposed to unreasonably high levels of secondhand and thirdhand wick smoke, methamphetamines smoke, and K2 (synthetic marijuana) smoke in each barracks I've been assigned to for housing.

8 . I have a constitutionally protected right to be housed in a smoke free environment under conditions of confinement that do not pose a threat and risk to my current and future physical health.

9 . Arkansas Department of Correction has in place a Policy that prohibits the introduction and furnishing of smoking, being in possession of illegal drugs, and making fires.

10.    All of the following Defendants had the obligatory duty to prevent the introduction of prohibited articles from entering Cummins Unit State Prison facility, but has breached their duty as building security personnel because illegal drugs has spreaded throughout the entire Cummins Unit State Prison and many inmates are using them and some overdose and die from the use of those illegal drugs: Defendants responsible are Musselwhite, Young, Rucker, Daniels, Coleman.

11.    At all relevant times, the Cummins Unit Pen-Store, being managed by Defendant Williams, was and still is, selling AA and AAA batteries, which are being altered and used as lighters for smoking, making wicks, and burning other things inside of the barracks.

12.    At all relevant times to this lawsuit, Defendants Pharfan and Kellabrew had the obligatory duty to train building security to prevent the introduction of prohibited articles from entering the Cummins Unit State Prison, among other security duties, but has breached their duty with deliberate indifference and put me in imminent danger where I am being forced to endure secondhand and thirdhand wick-smoke, methamphedamines smoke, and K2 (synthetic marijuana) smoke.

FACTUAL STATEMENT CONTINUED

13.    At all times relevant to this lawsuit, Defendant Hargraves had the duty of care to provide me reasonable and reasonabley medical healthcare system, but failed this duty intentionally by steriotyping me as a drug user and therefore discriminated against me and ignored my serious physical health complacations that was, and is, a direct result of enduring involuntary high levels of secondhand and thirdhand smoke no matter the sick calls I submitted, all in violation of my 8th Amendment rights, and with deliberate indifference. I did not fail drug tests.

14.    At all times relevant to this lawsuit, Defendant Payne had the obligatory to train and supervise A.D.C. employees, and also discipline them for misconducts and insubordinations, but has willingly and recklessly breached this duty, which has resulted in my imminent danger and serious physical health complications, all in violation of written policy and procedures.

15.    As a direct result of all defendants' omissions, failures, breaches, and misconducts I suffered respiratory difficulties, dizziness, chest pains, and head-aches each day, randomly, after being exposed to high levels of secondhand and thirdhand wick-smoke, methamphetamines, and K2 (synthetic marijuana) spices smoke for approximately three months of being housed at the Cummins Unit State Prison facility.

16.    On 8/10/2025 I submitted another sick call medical request on the kiosk concerning the matter of my serious physical health condition caused by involuntary secondhand and thirdhand wick smoke, methamphetamines smoke, and k2 (Synthetic marijuana) smoke since I've arrived at the Cummins Unit, which includes: chest pains, dizziness, respiratory problems, and headaches daily. On 8/11/2025 nurse Jane-Doe scheduled me to get a physical examination by the provider for my serious physical health complications. On 8/12/2025 I was seen by Doctor Young around 10:30 AM through 10:40 AM. During my scheduled visit with Doctor Young I was never given any type of medical examination or medical treatment for my serious physical health conditions, which being examined for my serious physical health conditions and being treated was the whole purpose for me being scheduled to see the provider. In contrary to my protected 8th Amendment right to be treated by A.D.C.'s medical personnel, and in contrary to Doctor Young's obligatory duty to provide me medical treatment for my physical health condition, which he owed me the duty of care, but breached that duty intentionally, then referred me to be seen by mental health personnel about getting back on my mental health medication (Seroquel), which Doctor Young told me verbally (without any medical examination) that he believes I'm having such physical health complications

FACTUAL STATEMENT CONTINUED...

because A.D.C. has taken me off of seroquel without weaning me off.

17.    On 8/12/2025 at around 11:00 AM I was seen by Mental Health Professional Ms. Monk, who informed me that she do not understand why Medical Personnel had not provided me any treatment for my physical health conditions, but instead referred me to be seen by mental health, who are not qualified to treat my physical health problems.

18.    As to paragraphs 7-17, the Defendants' misconduct has subjected them to liability of this civil action.

19.    There are extensive records of filed disciplinaries among other documents kept and held on the A.D.C. Eomis system that are sufficient evidence to prove the defendants' intent and disposition to do a wrongful act greatly injurous to another.

20.    The defendants' misconduct was, and still is, pursuant to a pattern, practice, or custom, which violates the United States Constitution.

21.    Though smoking is prohibited by written A.D.C. Policy, the entire Cummins Unit (except 1-4 barracks because they are single-man rooms) exposes me to secondhand and thirdhand wick smoke, methamphetamines smoke, and K2 (synthetic marijuana) spices smoke, and security personnel has customed a routine practice of catching detainees/inmates slumped over on the wall, in the bathroom, on their assigned racks other inmates' assigned racks, laying on the floor in puddles of vomit, slurred speech, misbehaving, all under the influence of intoxicants and illegal drugs and substances but fail to write the inmate a disciplinary for being under the influence.... examples are as follows:

a.  On May 31, 2025 at 8:04 pm Sgt. J. West came into barracks 5B and caught inmate James Maxey under the influence of K2, where he was slumped on his rack and unresponsive, but West never wrote the incident up;

b.  On June 6, 2025 at 6:10 pm officers Grosby and James came into barracks 5B and caught inmate Baldwin, on rack 42, slumped on his assigned rack, unresponsive, and under the influence of K2, but never wrote the incident up;

c.  On June 8, 2025 at 5:29 pm Captain Wade came into barracks 5B and caught inmate James Maxey under the influence of K2, slumped, and unresponsive, but never wrote the incident up.

d.    On June 8, 2025 at 8:07 pm Officers James and Levy came into barracks 5B and caught inmates Baldwin and Bomick slumped over under the influence of K2, on rack #8, Bomick's assigned rack, but the never wrote the incident up.

e.    On June 14, 2025 at 9:00 pm Officer Reed came into Barracks 5B and caught an inmate, who was assigned at the time and date stated herein to rack #9, slumped and under the influence of K2, but never wrote the incident up.

f.    On July 7, 2025 at approximately 3:47 AM Officers Grisby and Hadley were monitoring the chow hall and caught an inmate slumped in the chow-line, then flashed their flash light at him to wake him up out of the slump, but never wrote the incident up.

g.    On July 7, 2025 at approximately 9:12 pm Officer Cage came into barracks 5B and caught inmate Baldwin slumped on his assigned rack, #42, under the influence of K2, but never wrote the incident up... she only kicked the inmates rack to get his attention, but he was unresponsive.

h.    On July 16, 2025 at 2:23 pm Officers Trotter and Profit came into barracks 5B and caught an inmate under the influence of K2, made the inmate go outside of the

barracks and go into a holding cell until he got sober, but allowed him to come back into the barracks without even getting a disciplinary.

i.    On 7/21/2025 inmate Woods got wrote up for being under the influence of K2.

j.    On 7/29/2025 Lieutenant Smith came into barracks 5B and took an inmate out of the barracks where this inmate was charged with possession of drugs.

k.    On 7/30/2025 at around 9:30 AM Officers came into barracks 5B and took out another inmate, in connection of the drug incident on 7/29/2025, and charged this inmate with possession of drugs.

L.    On 7/30/2025 at 10:17 pm Officer Mr. Price came into barracks 5B and noticed that inmate Shaw, who was assigned to rack #10, had fell onto the floor and busted his head open during an episode from the use of K2. This inmate was rushed to a free-world hospital to get treatment.

m.    On 7/31/2025 Officer Willson failed her obligatory duty to prevent inmate Blood, who died on rack #7 at 1:47 AM, from smoking K2, and/or fitnol.

22.        On 7/31/2025 at approximately 8:30 ᴀᴍ officers came into barracks 5B and conducted a shake-down-strip-search for drugs and contraband, which they found none.

23.        On 8/5/2025 at approximately 7:30 ᴀᴍ officers came into barracks 5B and gathered all inmates up and instructed that we go to visitation. Once everyone, who were assigned to barracks 5B for housing, got to visitation we were all drug tested. At least 12 inmates failed their drug test (testing positive for methamphetamines) or either refused. Documentation of this is kept on the A.D.C. files and is controlled by the A.D.C. staff, and these files can be legally obtained through the discovery process of this lawsuit.

24.        K2 (Synthetic ᵒʳ ᶠⁱᵗⁿᵒˡ manjuana) spice, bath salts (synthetic methamphetamines), Methamphetamines, and other drugs, not prescribed by a doctor, are not intended for human consumption. When these drugs are produced, each batch can contain different chemicals that are likely to produce effects that are life-threatening and could cause death (as it did cause the death to inmate Blood on 7/31/2025 at 1:47 ᴀᴍ). All defendants have common knowledge that K2, methamphetamines, and other related synthetic drugs are highly dangerous and can cause seizures, vomiting, hallucinations, aggression, paranoia, anxiety, and panic attacks among users; all defendants also

know that A.D.C. has a written policy that explains
that such drugs are not tolerated, and subjects the
inmate(s) to disciplinary action, but as to statements
made in paragraphs 21(a) – 21(b) defendants were acting
under the color of a custom, created in contrary of written
policy, with deliberate indifference to the safety and health
of me and other inmates, these defendants (Musselwhite,
Young, Rucker, Williams, Daniels, Coleman, Pharfan, Kellabrew,
West, Crosby, James, Wade, Reed, Levy, Trotter, Profit,
Hadley, and Cage) not only failed to prevent drugs
from entering the state facility, but they also knew
that inmates were making lights to smoke and burn
wicks by altering AA and AAA batteries purchased from
the pen-store inside the prison, and failed to stop inmates
from buying batteries, which violated the constitution's
8th and 14th Amendments and is the direct result of my
damages in fact.

25.      As far as being moved to barracks 1-4 where inmates
are not being exposed to secondhand and thirdhand smoke,
the officers and classification staff are refusing to move me,
and Captain Danneil Johnson has told me that nothing could
be done about my current housing assignment, and where I'm
housed is a none-grievable matter, and it wouldn't matter
where I moved to at the cummins Unit because I'll be still
exposed to secondhand smoke in either barracks on the
entire compound, even in the P.A.L. Program.

26.    I've even asked to be transferred to another unit, but classification at the cummins unit has not responded to any of my requests, and other units has claimed that I will be placed on the transfer list, which is very extensive, and when available bed space comes open I will be considered for transferring then... while I'm being exposed to high levels of secondhand and thirdhand wick-smoke, methamphetamine-smoke, and K2-smoke, daily, I am in imminent danger of serious physical health conditions that includes, and is not limited to, having an asthma-attack, developing lung disease, developing cancer, or may cause organ failure, or death, to insinuate that my conditions of confinement is posing an immediate threat to my current and future health and cannot wait on some process to be completed because delaying will be unreasonable and will cause me more damages than I'm already suffering now.

26oo    As to statements in paragraphs 13, 15, 16, and 26, Under the Eighth Amendment, I am entitled to medical care for "serious medical needs", which suffering from high levels of daily secondhand and thirdhand wick-smoke, methamphetamines-smoke, and K2-smoke is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, especailly when I have already informed the medical personnel in writing that the condition is significantly affecting my daily activities, and that I am having serious chest pains.

27.    All Defendants named herein had reasonable notice, through the A.D.C.'s grievance procedure, utilized by myself, and other legal documentation written by A.D.C. and myself, including camera footages, and not limited to disciplinary actions and in person experiences, that inmates throughout the entire Cummins Unit were burning wicks, smoking illegal drugs, and exposing me to secondhand and thirdhand smoke on a daily basis, and causing me serious physical health complications, that's affecting my daily activities, but all defendants named herein was deliberate indifferent to my grievances, appeals, medical sick-calls, and constitutional protected rights and continued to fail in preventing drugs from entering the prison, continued to fail in preventing inmates from using those drugs, continued to sell inmates AA and AAA batteries to make lights for smoking, continued to house me in conditions of confinement that exposes me to secondhand and thirdhand smoke in a smoke-prohibited environment, in combination of still doing so, and on a path of continuing to do so in the future, and working together to hide it from the public's view. . . basically, these defendants' misconducts and omissions of duty has created acts of conspiring to cause me, and inmates in general, serious physical health complications and even death, and under that portion of the A.D.C.'s policy which requires each of these defendants to hold one another accountable for violations of A.D.C.'s Policy and other laws, but all defendants herein has intentionally breached this required

On 9/7/2025 from approximately 10:07 AM through about 12:00 PM my cellmate intentionally made a fire inside of the cell, North 18, and burned paper, thick plastic cups and bowls and burned things the entire time, exposing me to thick clouds of secondhand smoke; the whole time while Sgt. Night, Sgt. Bealey, and Lieutenant McGee knew my cellmate was burning things inside of the cell against A.D.C. Policy and regulation. It was retaliation for complaining about all the smoking and writing a grievance about it. Because I got moved to a cell that has even more smoke in it which constitutes cruel and unusual punishment because those defendants know that I have allergy and other medical related conditions caused by the smoke. This violated my 8th Amendment Right, because the secondhand smoke exposure was done with deliberate indifferent, where it posed an unreasonable risk of serious damage to me and my health (including harm that may occur in the future) and where the risk is sufficient to violate contemporary standards of decency that are continuing to grow. And the bad thing about it is... these named officers watched the fire and told the inmate to put the fire out..., nothing futher were done, the inmate never gotten written up for it by the officers. When I told them officers that I needed to be seen by medical because my chest and head were hurting because I was forced to be exposed to secondhand smoke all day, I was denied and not seen by medical for this problem on this day.

duty of care by willingly and recklessly failing to report the insubordinations, each defendant has done and is responsible for, to proper authorities (under the whistleblower act which protects employees from retaliation for properly disclosing employer wrong-doing such as violating a law or regulation, abusing authority, endangering health or safety) to stop the drugs from entering the Cummins Unit, and the sale of batteries to inmates who are using the batteries to make lights for smoking and burning things... absence of fire safety and prevention devices, which are required in a correctional facility to notify staff that a fire has started and to aid in the evacuation of smoke, is an obvious risk of serious harm, and failure to provide functional fire safety systems subjects me, and prisoners in general, to life-threatening conditions, and these defendants should have reported this fact too, but has also failed to do so.

## ENTITLEMENT TO RELIEF

### PERSONAL SAFETY

28.    The failure of Defendants (Musselwhite, Young, Pharfan, Kellabrew, and Payne) duty to train and to act on their knowledge of a substantial risk of serious physical harm to me (by secondhand and thirdhand smoke in the forms of very thick clouds) violated my Eighth Amendment right to be free from deliberate indifference

to my safety and health.

29.    As a direct result of defendants (named in paragraph 28) failures and omission to train defendants (Rucker, Williams, Daniels, Coleman, West, Crosby, James, Wade, Reed, Levy, Trotter, Profit, Hadley, and Cage) jointly and severally, while acting under the color of a custom and routine practice that moved with, or as, a force of law, subjected me to conditions of confinement that violate the constitution and caused me to suffer serious physical and emotional injuries.

## DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED

30.    The refusal to treat me for injuries resulting from being exposed to high levels of involuntary Wick-smoke, methamphetamines smoke, K2 or fitnol secondhand and thirdhand smoke constitute deliberate indifference to my serious medical need in violation of the Eighth Amendment.

## BREACH OF SECURITY

31.    The failure to prevent illegal drugs from entering the cummins prison and the failure to prevent inmates from using drugs, that resulted in me being placed in imminent danger of serious physical harm constitute's a breach of security in violation of the 8th and 14th Amendments ... the breach of security proximately caused my damages, and this complaint has standing and capacity.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests that this Court grant the following relief :

A. Issue an injunction ordering A.D.C. stop selling batteries (AA and AAA) so that inmates can stop making lights.

1. Immediately arrange for Plaintiff be housed under smoke-free conditions of confinement.

2. Immediately arrange for Plaintiff be treated for secondhand smoke exposure related injuries.

B. Award compensatory damages in the amount 2 Million Dollars.

C. Award punitive damages in the amount of 2 Million Dollars.

D. Order that each defendant be struck down in one rank position, and be ordered to enforce the A.D.C.'s written policy, which prohibits smoking and making lights.

Submitted on : 9/18/2025

TERRY LAMAR MCCOY

A.D.C.# 654559

Cummins Unit : 10 A.
Post Office Box # 500
Grady, AR. 71644-0500

*EXHIBIT #2*

Page 21 of 21                                                    800-4

**STATE OF ARKANSAS**              )
                                   ) §
**COUNTY OF** Lincoln              )

### DECLARATION OF VERIFICATION

I, TERRY LAMAR MCCOY _____, after first being duly sworn, do hereby swear, depose and state that: The foregoing complaint is correct and true (Pages 1-20) TERRY LAMAR MCCOY v. F. MUSSELWHITE, et al. submitted on 9/18/2025. 28 U.S.C. § 1746

I declare under penalty of purjury that the foregoing complaint is correct and true.

This Exhibit is just incase any documents or footages are misplaced or lost.

_____

I further swear that the statements, matters and things contained herein are true and accurate to the best of my knowledge, information and belief.

9/18/2025
DATE

TERRY LAMAR MCCOY
AFFIANT.

SEAL
SOCIAL SECURITY #

SUBSCRIBED AND SWORN TO BEFORE ME, a Notary Public, on this _____ day of
_____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires: _____

Terry Lamar M$^{c}$Coy
A.D.C. # 654559
Cummins Unit
Post Office Box # 500
Grady , AR . 71644-0500



ORIGINATED
FROM
ADC
CUMMINS UNIT

LEGAL - MAIL
SEPTEMBER 18, 2025

United States District Court
Eastern District of Arkansas
600 West Capitol Avenue
Little Rock , AR. 72201